We'll hear argument now in the case of Billie v. Village of Channahon. Mr. Fuoco. Yes. Good morning. May it please the court. May it please Mr. Murphy. I represent the appellants in this case. This case was dismissed incorrectly. Mr. Fuoco, if you would raise your voice some, that would help. That microphone is for recording. There's very little amplification. And this is a very big room. Yes, Your Honor. It certainly is. Thank you. This case was incorrectly dismissed on a 12b-6 motion. This case alleged a constitutional taking in violation of the Fifth Amendment in pleading specific facts that showed plausible taking by authorized government action to develop a floodplain in the backwater of the DuPage River. This occurred in Will County in the Village of Channahon. We've identified the individual defendants with responsibility, but the authorized actions... Mr. Fuoco, concretely, what did the village do that took the property, other than just approve the applications to build in the floodplain? The applications to build are one of the government authorized actions which directly and approximately caused the flooding. Other than approving the applications is my question. What did they do concretely? They allowed for the occupancy of houses. Look, in Cosby, the taking was flying low airplanes and destroying the value of property. It was something the government did, rather than just permitting people to do what they want. I'm looking for something parallel to Cosby. What did the government do? Did they divert water into this subdivision? Based upon what they allowed to be built, and again, as stated in the brief, I rely upon the Blundell rationale that was adopted by the District of Utah. Look, the District of Utah counts for nothing here. Decisions of the Seventh Circuit and the Supreme Court count for a lot. And what those decisions say is the government has to do something, at a minimum, just to get you to first base. The government does something that reduces the value of the property. I can't see anything here that the government did, other than stop your client and similar people from making what they view in retrospect as a mistake. That is, building in a floodplain. Did the government do anything, other than permit your clients to build? My clients weren't permitted to build, Your Honor. That's the fallacy of this case. My clients all purchased houses, either from spec builders. Look, when I say permit them to build, I mean they and their predecessors in interest. Take the property as it comes. Right, so every time I say they, you can hear they and their predecessors in interest. I'm looking for what you think the government did, other than just grant permission. Granting permission is authorized government action. All right, I hear your answer to my question as nothing at all. I disagree, Your Honor. What did it do, other than grant permission? And you can't answer that question by saying they granted permission. Because the question is, what did they do, other than grant permission? They alleviated the developers and the builders from the obligations that were burdensome. Sounds like granting permission. Is there any evidence in the record that the village required the builders to build the basement at the depths that they did? Or was that something that was decided by the builders? That is such a specific evidentiary fact. What I do know is what the actual depths were. Inferentially, it is reasonable to infer that the village did, in fact, either require it or know of it. What? And I didn't see anything in the complaint suggesting that the village mandated the builders to build the basements at this certain depth. I know they asked built. I know they approved the construction. And I know they approved the occupancy. So I'm asking the court. But that's different than mandating it. But I'm asking the court to reasonably infer which 12b6 procedure allows that, in fact, the village required that. From the facts play, that is a reasonable inference. Because we have all three pieces of exactly what happened. We don't have the document. That's discovery. Unfortunately, I was precluded from doing that. What you have is a factual record. What you have are plausible facts that should have been found to state a claim for a Fifth Amendment taking that should have been allowed to proceed in order to develop a factual record. 12b6 is designed for plausibility review. This was treated almost as if this is a summary judgment analysis. I'll reserve the rest of my time. Could you come back, please? Yes, Your Honor. If the village required the digging of basements, how would that have been done? Or basements of a particular depth? A plan would be submitted. And Mr. Pinky, who is deceased, who is represented by an administrator, would have said, do it, or I want this modified, or you have to change it. Again, the village is the arbiter of what gets built. A village acts through ordinances and regulations sometimes. Are you pointing to some particular ordinance or regulation that we should go look at? Absolutely. And it's all throughout the brief and reply. This is the federal emergency. I didn't see any ordinance cited in the brief that said that the village mandated that these basements be dug at a certain level. So that's the question. Are you relying on an ordinance from the village or some directive from the village where they said the builder at the time had to build these basements out to a certain depth? Here is the progression. The village of Shanahan is... I'm sorry, I don't mean to interrupt, but is there a particular ordinance you're relying on? I know you're saying draw inferences from this and that, but the question was more specific than that. And I will answer your question. The criteria for land management is an obligation of a participating community in the flood insurance program. Ordinance 703 in Section 200 confirmed that the village was bound by all FEMA regulations pertaining to land management criteria. And that is what they were obligated to do. That is what action they had to take to make sure that these houses were built to be reasonably safe from flooding. And those actions were not taken. I know you're completely losing me, and perhaps you are, Judge St. Eve, as well. We are looking for things that the village required people to do as opposed to things the village permitted people to do. And you're just not drawing that distinction. You're not helping us, therefore. Is there something you can tell us about what and how the village required your clients and their predecessors in interest to do? It's the construction planning process. Somebody proposes something. The village plan reviewer has the total and complete power to say, this is what you do. Well, no, they don't. If it's confirmed in the plan, then it's okay. They can do that, and then they're subject if they err, they're subject. Or a modification of the plan. But they didn't. They approved the things submitted to them. Your Honor, that's evidentiary. That takes discovery. If you think you can file a lawsuit like this without even alleging that the village demanded changes in the plans, I think you're pretty much mistaken. The only way to get construction plans is by subpoena. I don't have the power to subpoena. You represent property owners who are in contractual relations with their predecessors in interest. Have you tried to get any of these documents from them? Construction plan documents would not be with them because these are spec builders. These are people long, long, long in the past. And those documents would be possessed only by the village of Shanahan. That's just. That's a record set of as-built construction, and it's a construction plan folder or electronic stored documents on fiche that I can only get by subpoena. I cannot answer your questions because I haven't been allowed to do discovery. This sounds like a Rule 11 problem.  Mr. Murphy. Good morning, Your Honors. Jim Murphy on behalf of the village of Shanahan and the individual Shanahan defendants. I think the courts have pointed out through the questions some of the issues that really doomed this case. What plaintiffs are asking you to come up with is a taking that has never been allowed by any court that we know of, and that is a taking based on flooding without any governmental action that actually increased the amount of water onto plaintiff's property. The complaint is clear in this case that didn't happen. The complaint specifically alleges that the reason for the flooding is because of the depths of the basements that were built. That is plain and simple. There is nothing in Shanahan or in the complaint that alleges that the basements were required to be built at the depths they did. In fact, it's a reasonable inference that they were built at the depths that were requested by the spec builders, the plaintiff's predecessors in interest. Well, I have the same question for you that Judge St. Eve asked Mr. Fuoco, which is, is there anything in the ordinances or zoning regulations that speaks to the mandatory depth of basements? I don't believe so. Certainly not alleged in the complaint, just knowing generally. Look, one does not allege law in a complaint. No, I understand. You find out what's in the ordinances by looking at the ordinances. There would be nothing that I am aware of, and from general construction, you could build it on slab. You could build it with a crawl space. You don't even have to build it with a basement. In that sense, the answer is certainly no. The only other thing that I would point out in this case that the district court did not get to is we are dealing with a case that goes back over 26 years before the case was filed. The plaintiff actually demanded in 2009 that their house be bought out. That's well before it was filed. We have brought up a statute of repose that we think the federal courts are— Isn't there a question of fact, though, on the statute of limitations as to when they requested a buyout? That's not something that the court could have decided at the 12B-6, is it? In terms of—actually, it's pled that they asked for a buyout. In 2009? In 2009. They pled that? They pled that, yes. Now, that only goes to Billy, defendant. I'm not sure about—or, excuse me, plaintiff. I'm not sure about other plaintiffs. But it certainly indicates the other plaintiffs would have known the same information that Billy did. And with regard to the statute of repose, that's a 10-year that we think should be engrafted onto the two-year statute of limitations for 1983 purposes because the courts have said when you borrow the state statute for personal injury, you need to borrow the other statutes that go along with it. And under the Illinois Supreme Court, they have found that the statute of repose gets engrafted onto that and it prevails. And that 10 years ran from 1996 to 2006 was when the statute of repose ended. So, even if you were to somehow find that there's a cause of action, we'd ask you to go back and specifically take a look at that and also our other arguments. But really, the issue here is, has there been a taking? And as your questions have seemed to indicate, and we believe the district court was absolutely correct that there has not been a taking in this case. So, I have nothing else unless you have questions for me. Thank you. Thank you, Your Honors. Thank you very much. The case is taken under advisement.